**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Sunset Lodge, LLC,

and

Franklin D. Beattie, as trustee of The Franklin D. Beattie Preservation Trust,

and

M. Baron Stanton, Plaintiffs,

v.

Town of Pawleys Island, Defendant,

Of which Sunset Lodge, LLC and Franklin D. Beattie, as trustee of the Franklin D. Beattie Preservation Trust are the Appellants,

and

Town of Pawleys Island is the Respondent.

Appellate Case No. 2022-000291

———————————

Appeal From Georgetown County
Michael G. Nettles, Circuit Court Judge

———————————

Unpublished Opinion No. 2026-UP-274
Heard March 4, 2025 – Filed June 3, 2026

M. Baron Stanton, of Stanton Law Offices, P.A. of
Columbia, for Appellants.

Norwood David DuRant, Sr. and Norwood David
Durant, Jr., of Law Offices of N. David DuRant &
Assoc., of Surfside Beach, and William Clayton Dillard,
Jr. of Belser Law Firm, PA, of Columbia, for
Respondent.

**MCDONALD, J.:** The issues in this appeal arise from a successful action by Franklin D. Beattie; Sunset Lodge, LLC; and M. Baron Stanton (collectively, Landowners) to quash the initial set of three condemnation notices pursued by the Town of Pawleys Island. Landowners argue the circuit court erred in finding their requested attorney's fees were unreasonable and in calculating the fee award based upon a considerably reduced number of hours, which they contend resulted in an 87% difference between the fees requested for the hours claimed and the fees awarded for hours the circuit court deemed reasonable. Although we agree with the circuit court that Appellants' fee petitions claimed far too many hours worked considering the length and difficulty of the underlying cases, we find the circuit discounted the claimed hours too steeply. Thus, we affirm as modified.

**Factual and Procedural Background**

This case began with the Town's attempts to obtain easements allegedly necessary for a beach renourishment project. The Town began seeking easements from affected landowners in February 2019, but its discussions with Landowners were unsuccessful due to the broad terms and scope of the easements the Town proposed. Initial easement proposals sought to subject an affected lot to overly broad public access and to grant the Town an apparently unfettered ability to remove undefined "obstructions" from the proposed easements. Perhaps of greatest concern, the easements as proposed would have included the entire lots and dwellings. Under later proposals, "the subject part" for the proposed easements was defined as "the part running from the owner's eastern property

boundary shown on the plat prepared by the Town (the mean high watermark on the ocean) west (landward) to two feet from the main supports of the main house."

During the course of the project, the Town obtained easements from the majority of affected property owners, but some, including Landowners, stood firm. In May 2020, the Town adopted a resolution authorizing condemnation of the remaining easements, erroneously claiming the Town's project with the Army Corps of Engineers could not proceed without them. The proposed easements again subjected the private land affected to wildly broad "public use and access." And, although the Town obtained appraisals for the proposed easements, it curiously—and in violation of the applicable statute—served the condemnation notices without providing these appraisals.

The three Landowners filed separate actions challenging any condemnation of their properties; voluminous motions and memoranda followed. Ultimately, the circuit court granted summary judgment to Landowners.

In its formal order, the circuit court explained that the grant of summary judgment was based upon the Town's failure to comply with both its own resolution "describing the easement to be condemned" and the applicable condemnation statutes. The circuit court noted the Town "sought to condemn an easement of greater scope than authorized by Town Council, and [of] greater scope than appraised, but to pay an amount for the easement based on a different description." The circuit court further recognized the Town had included a provision—purportedly through the power of condemnation but contrary to its prior representations—for an easement "together with the right of public use and access." The condemnation notices described the interests in the properties differently than the appraisals described them, and the Town then failed to provide Landowners with appraisal reports before serving the condemnation notices. The circuit court noted Landowners had executed easement deeds and provided them to the Town with terms allowing for the renourishment activities, but the Town inexplicably rejected them. Detailing the Town's inconsistent representations and providing other examples of its municipal overreach, the circuit court granted Landowners' motions for summary judgment, quashed the three condemnation notices, and declared each matter "ended without prejudice in the respect described above." The Town filed Rule 59(e), SCRCP, motions requesting that the circuit reconsider the grants of summary judgment.

Landowners subsequently filed fee petitions, with supporting affidavits, claiming attorney's fees of $131,625.14. They requested that each be awarded one-third of

the total fee award based upon their fee-sharing agreement. Stanton later clarified that he sought only the $1,082.66 in costs associated with his action, which would have reduced the Town's overall fee burden by one-third.

The Town filed an "Initial Reply" opposing the motion for fees and expenses and requesting itemized fee statements. Landowners responded with a memo discussing what had already been provided in support of the fee requests and offering to submit supplemental documentation subject to a protective order. Landowners then filed a lengthy brief addressing matters scheduled for "discussion with" the circuit court and again requested a protective order allowing them to produce redacted bills to the Town and unredacted bills to the court under seal. The Town likewise sought a protective order with its own memo addressing the production of documents relevant to the fee petitions. Landowners objected to the circuit court's hearing of the Town's latest motion, arguing it was filed too late; they also noticed the deposition of Ryan Fabbri, the Town Administrator. In response, the Town filed a motion for a "protective order regarding discovery," arguing the circuit court's grant of summary judgment rendered moot the Town's further participation, and sought an order quashing Fabbri's deposition notice. Landowners responded to this filing with a forty-three-page brief and protective order proposal.

The circuit court ordered Landowners to produce redacted fee statements to the Town's counsel and unredacted fee statements to the court. The circuit court also denied the Town's Rule 59(e) motions but substituted an amended summary judgment order clarifying a reference to the beach renourishment project. The circuit court later ordered Landowners to produce revised redacted fee statements to the Town based upon the court's amendments to their initial redactions.

A third amended fee affidavit followed, presenting a total claim of $175,895 in attorney's fees and $5,700 in expenses; an erratum later corrected the amount requested per owner to $61,112.02.

The Town responded to Landowners' lengthy fee petition filings with an opposing memo accompanied by several exhibits. This packet included the affidavit of the Town's expert witness, David Pagliarini, who opined Landowners' request for attorney's fees was unreasonable. Based on a rough computation, Pagliarini believed 125 hours was a reasonable and fair fee amount for an attorney to devote to these three cases. The Town also attached an affidavit from William Dillard, its new attorney and appellate counsel, who calculated 127 hours to be reasonable.

Following a hearing, the circuit court held the fees Landowners claimed were unreasonable based upon the scope and complexity of the three cases. Accepting the hourly figure proposed in the Pagliarini affidavit, the circuit court found an award calculated upon 125 hours of work was appropriate, awarding fees and costs of $8,913.33 each to Beattie and Sunset Lodge and costs of $819.33 to Stanton. Appellants timely filed Rule 59(e) motions, which the circuit court denied.

**Standard of Review**

"Decisions as to the amount of attorneys' fees should ordinarily be made by trial courts. When a trial court's decision is made on a sound evidentiary basis and is adequately explained with specific findings—as the law requires—we defer to the trial court's discretion." *Horton v. Jasper Cnty. Sch. Dist.*, 423 S.C. 325, 331, 815 S.E.2d 442, 445 (2018). "The decision to award or deny attorneys' fees under a state statute will not be disturbed on appeal absent an abuse of discretion." *S.C. Dep't of Transp. v. Revels*, 411 S.C. 1, 8, 766 S.E.2d 700, 703 (2014) (quoting *Kiriakides v. Sch. Dist. of Greenville Cnty.*, 382 S.C. 8, 20, 675 S.E.2d 439, 445 (2009)). "Similarly, the specific amount of attorneys' fees awarded pursuant to a statute authorizing reasonable attorneys' fees is left to the discretion of the trial judge and will not be disturbed absent an abuse of discretion." *Id.* at 8, 766 S.E.2d at 703–04 (quoting *Kiriakides*, 382 S.C. at 20, 675 S.E.2d at 445). "An abuse of discretion occurs when the conclusions of the trial court are either controlled by an error of law or are based on unsupported factual conclusions." *Id.* at 8, 766 S.E.2d at 703 (quoting *Kiriakides*, 382 S.C. at 20, 675 S.E.2d at 445). "However, where the issue of the amount of attorneys' fees awarded depends on the Court's interpretation of 'reasonable' attorneys' fees as contained in the [Eminent Domain Procedure] Act, the interpretation of the statute is a question of law that the Court reviews de novo." *Id.* at 8, 766 S.E.2d at 704.

**Calculation of Attorney's Fees**

"Although the circuit court has discretion in deciding the 'specific amount of . . . reasonable attorneys' fees,' its decision must not be 'based on unsupported factual conclusions.'" *Horton*, 423 S.C. at 331, 815 S.E.2d at 445 (2018) (first quoting *Kiriakides*, 382 S.C. at 20, 675 S.E.2d at 445; and then quoting *Sloan v. Friends of the Hunley, Inc.*, 393 S.C. 152, 156, 711 S.E.2d 895, 897 (2011)). The Eminent Domain Procedure Act (the Act) contains a fee-shifting provision allowing landowners who successfully challenge a municipality's efforts to condemn their property to recover reasonable costs and litigation expenses. S.C. Code Ann.

§ 28-2-510 (2007).  Section 28-2-510(A) provides, "If, in the action challenging the condemnor's right to take, the court determines that the condemnor has no right to take all or part of any landowner's property, the landowner's *reasonable* costs and litigation expenses incurred therein must be awarded to the landowner." (Emphasis added).  Under the Act:

> "Litigation expenses" means the reasonable fees, charges, disbursements, and expenses necessarily incurred from and after service of the Condemnation Notice, including, but not limited to, reasonable attorney's fees, appraisal fees, engineering fees, deposition costs, and other expert witness fees necessary for preparation or participation in condemnation actions and the actual cost of transporting the court and jury to view the premises.

S.C. Code Ann. § 28-2-30(14) (2007).  In interpreting section 28-2-510, our supreme court has concluded that the General Assembly intended for attorneys' fees to be awarded based on a "constellation of factors."  *Revels*, 411 S.C. at 10–11, 766 S.E.2d at 705.  As to the reasonableness of fees generally:

> When determining the reasonableness of attorney's fees under a statute mandating the award of attorney fees, the contract between the client and his counsel does not control the determination of a reasonable hourly rate. Instead, the court should consider the following six factors when determining a reasonable attorney's fee: (1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; and (6) customary legal fees for similar services.

*Jackson v. Speed*, 326 S.C. 289, 308, 486 S.E.2d 750, 759–60 (1997) (citations omitted).[1]

After amending the fee petitions multiple times, Landowners ultimately claimed $175,895 in attorney's fees incurred and estimated another $5,700 would be

---

[1] Our supreme court has emphasized that "a *Jackson* evaluation is neither required nor forbidden under section 28-2-510."  *Revels*, 411 S.C. at 13, 766 S.E.2d at 706.

required to close their cases.  They requested $61,093.33 each, equal to their associated costs and 1/3 of the total attorney's fees.  They claimed counsel spent 774.3 hours on the case from August 2020 through March 2021, and 146.2 hours from March 2021 through September 2021; Stanton further estimated he would spend an additional thirty hours to conclude the cases, for a total of 950 hours.

We agree with the circuit court that Appellants' request for a fee award calculated on 950 claimed hours was unreasonable.  Yet, based upon the circumstances of these cases—specifically the Town's problematic behavior and the irreconcilable inconsistencies between the summary judgment order and findings in the fee order—the circuit court erred in relying solely on the Pagliarini affidavit to make a finding of reasonable hours worked on the three challenge cases.  Initially, we note our concerns with the fee order's statements regarding "non-prevailing claims."  We are perplexed as to how some of the fee order's findings could be reached in light of the discovery blocked by the Town before all of Landowners' claims could properly be considered on the merits.

Contrary to the Town's assertions, the circuit court's grant of summary judgment some six months after the three actions were filed was based on much more than the mere procedural defects in the Town's first set of condemnation notices.  At the outset, the Town engaged in troubling conduct by seeking unreasonable easements exceeding the scope of those authorized by Town Council (or required by the Army Corps of Engineers).  The Town's rejection of the easements Landowners prepared and proposed—for reasons the Town cannot or will not explain—undoubtedly increased the difficulty (and costs) of the litigation.  Because the Town's continued behavior increased the attorney time necessarily devoted to these cases, it was error for the circuit court to so severely discount the fees deemed "reasonable."  Yet, while the Town's behavior certainly made the proceedings more difficult, such did not warrant the excessive hours Stanton asserts he devoted to these three cases.[2]

---

[2] We recognize the Town's position that Landowners' acrimony and approach may have led to some of the Town's behavior.  But it is difficult to discern the "chicken and the egg" here in light of the Town's ongoing heavy-handed approach to these three proposed easements.  Indeed, a second set of faulty and similarly overbroad condemnation notices was swiftly withdrawn after Landowners (again) challenged them. The appeal of the circuit court's order on the fee petitions arising from these later condemnation notices is addressed in *Sunset Lodge v. Town of Pawleys Island*, Op. No. 2026-UP-275 (S.C. Ct. App. Filed June 3, 2026).  And, despite arguing before the circuit court that the later challenge cases were moot due to its

We further agree with the circuit court that Stanton's "block billing" makes it difficult to determine the time allotted to specific tasks, particularly because Stanton billed time by the day, with a few exceptions.  For example, on January 25, 2021, Stanton billed 12.2 hours for "Continue review of various authorities and preparation of fee affidavit" and 7.6 hours for "Continue work on fee affidavit; Prepare motion, proposed order and Form 4; Electronically file; Memo to Judge Nettles; Confer by telephone with [redacted]; Memo to Mr. Durant."  Stanton's claim that he billed 19.8 hours in one day obviously requires scrutiny, and he devoted an extreme amount of time to preparing the fee affidavits and supporting materials.

Although the twenty hours claimed for one day's work is perhaps the most obvious, other entries in the record support the circuit court's finding that some of the fees requested were unreasonable in relation to the complexity of these matters.  For example, in another instance, Stanton billed 6.1 hours as "Receive and respond to emails with Mr. Dillard and Mr. Smith."  And, over a six-day period, he claims to have worked between 8.1 and 11.7 hours per day to draft the complaint and complete other tasks.

Thus, while the circuit court correctly found the total hours claimed were unreasonably excessive, it erred to the extent it simply accepted the 125-hour figure provided in the Pagliarini affidavit.  Pagliarini's opinion must be considered

_____

withdrawal of the second set of notices, the Town continues to assert that it may pursue further easement condemnation efforts.  This contention is accompanied by the Town's steadfast refusal to accept responsibility for its own problematic conduct—and the degree to which the Town's behavior may have led to counsel devoting more time to these cases than the Town's fee expert, Pagliarini, believed necessary.  Pagliarini's affidavit understandably declines to reference his client's poor behavior, but his statement that "summary judgment was granted solely on the procedural violations" ignores that Landowners were forced to litigate more here than mere "procedural violations."  Indeed, Judge Nettles' amended summary judgment order sagely recognizes that certain representations made by the Town do not square with the Town's actions or reasoning regarding the scope of the easements it sought to condemn.  The Town's problematic behavior undoubtedly increased the attorney time Landowners' counsel believed was needed to counter the Town's repeated—and, as recognized in the summary judgment order, apparently unnecessary— intrusions on their private property rights.

through the filter of *this* case and a review of this record. *See, e.g.*, *Revels*, 411 S.C. at 15, 766 S.E.2d at 707 (discussing the "constellation of factors" the trial court must consider in calculating a fee award).

We find attorney's fees of $47,500—based upon 250 hours worked at an hourly rate of $190—to be reasonable for these three now-consolidated matters. Calculating the award based upon 250 hours worked produces a reasonable attorney's fee award more in line with "customary legal fees for similar services." *Jackson*, 326 S.C. at 308, 486 S.E.2d at 760. Accordingly, we modify the circuit court's award to $47,500 in attorney's fees and $913.33 in costs and note the awards are to be shared among the appellant Landowners pursuant to their fee sharing agreement.

**Conclusion**

Based on the foregoing, the circuit court's order awarding attorney's fees is

**AFFIRMED AS MODIFIED.**

**KONDUROS and VINSON, JJ., concur.**